FILED
 2010 Oct-07  PM 02:05
 U.S. DISTRICT COURT
     N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| BRUCE VAUGHN, SR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 09-G-2503-M |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |
| ) | |

**MEMORANDUM OPINION**

The plaintiff, Bruce Vaughn, Sr., brings this action pursuant to the provisions of section 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration (the Commissioner) denying his application for Social Security Disability benefits.  Plaintiff timely pursued and exhausted his administrative remedies available before the Commissioner.  Accordingly, this case is now ripe for judicial review under 205(g) of the Social Security Act (the Act), 42 U.S.C. §405(g).

**STANDARD OF REVIEW**

The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied.  <u>Bloodsworth v. Heckler</u>, 703 F.2d 1233, 1239 (11th Cir. 1983).  To that end this court "must scrutinize the record as a whole to determine if the decision reached

is reasonable and supported by substantial evidence." <u>Bloodsworth</u>, at 1239 (citations omitted). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." <u>Bloodsworth</u>, at 1239..

## STATUTORY AND REGULATORY FRAMEWORK

In order to qualify for disability benefits and to establish his entitlement for a period of disability, a claimant must be disabled. The Act defines disabled as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I). For the purposes of establishing entitlement to disability benefits, physical or mental impairment is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

In determining whether a claimant is disabled, Social Security regulations outline a five-step sequential process. 20 C.F.R.§ 404.1520(a)-(f). The Commissioner must determine in sequence:

(1) whether the claimant is currently employed;

(2) whether he has a severe impairment;

(3) whether his impairment meets or equals one listed by the Secretary;

(4) whether the claimant can perform his past work; and

    (5)    whether the claimant is capable of performing any work in the national economy.

Pope v. Shalala, 998 F.2d 473, 477 (7th Cir.1993); accord McDaniel v. Bowen, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job." Pope at 477; accord Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner further bears the burden of showing that such work exists in the national economy in significant numbers. Id.

        In the instant case, ALJ Michael L. Brownfield determined the plaintiff met the first two tests, but concluded that while he has an impairment or impairments considered "severe," his impairments do not meet or equal in severity any impairment set forth at 20 C.F.R. Part 404, Subpart P, Appendix 1. [R. 12]. The ALJ found the plaintiff unable to perform his past relevant work. Once it is determined that the plaintiff cannot return to his prior work, "the burden shifts to the [Commissioner] to show other work the claimant can do." Foote, at 1559. Furthermore, when, as is the case here, a claimant is not able to perform the full range of work at a particular exertional level, the Commissioner may not exclusively rely on the Medical-Vocational Guidelines (the grids). Foote, at 1558-59. The presence of a non-exertional impairment, pain, also prevents exclusive reliance on the grids. Foote, at 1559. In such cases "the [Commissioner] must seek expert vocational testimony." Foote, at 1559.

## THE STANDARD WHEN THE CLAIMANT TESTIFIES HE SUFFERS FROM DISABLING PAIN

In this circuit, "a three part 'pain standard' [is applied] when a claimant seeks to establish disability through his or her own testimony of pain or other subjective symptoms." Foote, at 1560.

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

Foote, at 1560 (quoting Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991). In this circuit medical evidence of pain itself, or of its intensity, is not required.

> While both the regulations and the Hand standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself. Thus under both the regulations and the first (objectively identifiable condition) and third (reasonably expected to cause pain alleged) parts of the Hand standard a claimant who can show that his condition could reasonably be expected to give rise to the pain he alleges has established a claim of disability and is not required to produce additional, objective proof of the pain itself. See 20 CFR §§ 404.1529 and 416.929; Hale at 1011.

Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1215 (11th Cir. 1991) (parenthetical information omitted) (emphasis added). Furthermore, it must be kept in mind that "[a] claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." Foote at 1561. Therefore, if a claimant testifies to disabling pain and satisfies the three part pain standard, he must be found disabled unless that testimony is properly discredited.

When the Commissioner fails to credit a claimant's pain testimony, he must articulate reasons for that decision.

> It is established in this circuit that if the Secretary fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the Secretary, as a matter of law, has accepted that testimony as true. Implicit in this rule is the requirement that such articulation of reasons by the Secretary be supported by substantial evidence.

Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987). Therefore, if the ALJ either fails to articulate reasons for refusing to credit the plaintiff's pain testimony, or if his reasons are not supported by substantial evidence, the pain testimony of the plaintiff must be accepted as true.

## THE IMPACT OF A VOCATIONAL EXPERT'S TESTIMONY

It is common for a vocational expert ("VE") to testify at a claimant's hearing before an ALJ, and in many cases such testimony is required. The VE is typically asked whether the claimant can perform his past relevant work or other jobs that exist in significant numbers withing the national economy based upon hypothetical questions about the claimant's abilities in spite of his impairments. "In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999).

If the claimant is unable to perform his prior relevant work the burden shifts to the Commissioner to establish that he can perform other work. In such cases, if the vocational expert testimony upon which the ALJ relies is based upon a hypothetical

question that does not take into account all of the claimant's impairments, the Commissioner has not met that burden, and the action should be reversed with instructions that the plaintiff be awarded the benefits claimed. This is so even if no other hypothetical question is posed to the VE. See Gamer v. Secretary of Health and Human Services, 815 F.2d 1275, 1280 (9th Cir. 1987)(noting that when the burden is on the Commissioner to show the claimant can do other work, the claimant is not obligated to pose hypothetical questions in order to prevail). However, it is desirable for the VE to be asked whether the claimant can perform any jobs if his subjective testimony or the testimony of his doctors is credited. Such a hypothetical question would allow disability claims to be expedited in cases in which the ALJ's refusal to credit that testimony is found not to be supported by substantial evidence.

In Varney v. Secretary of Health and Human Services, 859 F.2d 1396 (9th Cir. 1987), the Ninth Circuit adopted the Eleventh Circuit rule which holds that if the articulated reasons for rejecting the plaintiff's pain testimony are not supported by substantial evidence, that testimony is accepted as true as a matter of law. Id at 1401. The court noted that "[a]mong the most persuasive arguments supporting the rule is the need to expedite disability claims." Id. If the VE is asked whether the claimant could perform other jobs if his testimony of pain or other subjective symptoms is accepted as true, the case might be in a posture that would avoid the necessity of a remand. As Varney recognized, if the VE testifies the claimant can perform no jobs if his pain

testimony is accepted as true, the only relevant issue would be whether that testimony was properly discredited.  Id.  This also holds true for the opinions of treating physicians.

## DISCUSSION

The plaintiff was 46 at the time of ALJ Michael Brownfield's decision. The ALJ found the plaintiff has "degenerative disc disease (DDD) of the cervical spine." [R. 12].  A December 10, 2003, MRI of the cervical spine found:

> Degenerative disc disease.  At the C6-7 level, there is a large right paracentral disc protrusion which extends into the inferior aspect of the right foramen and demonstrates mass effect on the spinal cord at this level.

[R. 155].  Also, a July 2, 2003, MRI of the lumbar spine showed that:

> There are disc deformities seen at the L4-5 and the L5-S1 levels.  Small left paracentral disc protrusion are seen which may deflect upon the proximal left L5 and S1 nerve roots.

[R. 167].

In applying the Eleventh Circuit's pain standard, the ALJ found that the plaintiff was not credible, despite MRI evidence of a "severe six-sided right paracentral protrusion extending in to [sic] the inferior aspect of the right foramen."  [R. 14].  The ALJ also noted that the plaintiff had "epidural steriod injections (ESIs) without improvement."  [Id.].  Despite this, the ALJ found that the "longitudinal medical evidence of record does not support the claimant's allegations of disability as alleged."  [Id.].

> Dr. Richey, of Redmond Family Care Center, diagnosed the claimant with DDD, without worsening symptoms and carpal tunnel syndrome.  In a progress note dated October 13, 2005, Dr. Richey noted the plaintiff's medications were helping and he wanted to increase the dosage.  Additional progress notes indicated that the claimant was stable with his medications

> (Exhibits 9F and 10F).  Furthermore, Dr. Girgis, of the Harbin Clinic, opined the claimant was under appropriate medical care and he did not feel that he had anything to offer him at that time (Exhibit 4F).  Moreover, the claimant testified that he has not been to the emergency room or had an overnight visit to the hospital in a year.  He said [that] he sees his primary care physician every six months.  The undersigned reduced the claimant's residual functional capacity based on the fact that he still has residual complaints and symptoms making it difficult for him to perform certain exertional and postural activities.  However, contrary to the claimant's allegations, his impairments and limitations arising therefrom, do not preclude him from performing all work activity.

[R. 15].  The plaintiff testified that he sees Dr. Richey, his "regular doctor," every six months, however, "He wanted to see me more, but I couldn't afford it."  [R. 41].  Moreover, simply because the plaintiff "has not been to the emergency room or had an overnight visit to the hospital in a year," it does not follow that the plaintiff does not have disabling pain.  Additionally, the continued prescriptions by treating physicians for narcotic pain medicines and epidural steroid injections lends strong support to the plaintiff's allegations of intense or persistent pain.

It is clear that the ALJ's articulated reasons for rejecting the plaintiff's pain testimony are not supported by substantial evidence.  Therefore, the ALJ failed to satisfy the requirements of Hale.  The conclusion of that court is equally appropriate in the instant case.  "[T]he Secretary has articulated reasons for refusing to credit the claimant's pain testimony, but none of these reasons is supported by substantial evidence.  It follows, therefore, that claimant's pain testimony has been accepted as true."  Hale, at 1012.

The plaintiff testified that he cannot stand or sit for a long time because of chronic pain.  [R. 42].  He cannot walk for more a block because of pain in his feet and

8

back. [R. 43]. He rated his pain on a 10-point scale as "Eight to 10 at least. It's severe."

[R. 44]. He testified that his pain keeps him awake at night:

> I don't sleep good and the only way I sleep decent is the medication that I take and it makes me – it really hangs me over in the morning. My doctor told me I need to take it as early as possible because the affect [sic] in the morning, if you don't get enough sleep with it, it – it's like – he told me, his words was, it's like being on a drunk. [sic] He said you'd feel like you were hung over.

[R. 45]. The plaintiff testified that he quit smoking "because the doctor, my pain management doctor told me that it would help a great deal. [R. 42]. Because of constant pain, he lies down for four hours during the day. [R. 46].

At the hearing, the ALJ questioned the vocational expert:

Q: If I should find the Claimant capable of lifting objects going up to 15 pounds. That he could sit for as much as six out of eight hours per day. Stand and walk for four out of eight hours per day, but would require a sit, stand option. He would be precluded from any repetitive overhead reaching or lifting. He could not engage in repetitive fingering. He could not work in an environment where there is concentrated exposure to extreme cold, extreme heat or wetness. He would have to avoid hazardous machinery, as well as unprotected heights. He would be precluded from jobs requiring the satisfaction of any production quotas. He would be limited to jobs involving only non-complex job tasks.

A: That's it?

Q: Well, this would – I – would – I assume this would preclude his past work?

A: Oh, yes.

Q: Would there be any jobs he could perform?

9

> A: Yes, Your Honor, there would be. Examples would be security monitor or gate guard or security guard. those would fall both in light and sedentary and there would be at least 2,000 of those in the State of Alabama. There would also be telephone operators. There could be solicitors, order clerks. There would be at least 2,000 of those. There would be information clerks and receptionists, both at light and at sedentary. A total of at least 3,000 in the State of Alabama. And those are just examples.

[R. 50-51]. However, when asked about the plaintiff's pain, the VE testified:

> Q: If I should find the Claimant experiences pain of a moderate degree, how would that affect the performance of the jobs you cited?
>
> A: It would not.
>
> Q: What about pain of a moderately severe to severe degree?
>
> A: He would not be able to work at any job if the pain was at that level.
>
> Q: If I should find the Claimant's testimony to be fully credible and supported by the record as a whole, would there be any jobs he could perform?
>
> A: No, Your Honor, not based on what he said about –
>
> Q: And what's the –
>
> A: – having to rest.
>
> Q: – basis of your opinion?
>
> A: Having to rest, having to lie down.
>
> Q: If he were restricted to jobs allowing the ability to take rest breaks at will for periods of time at will, at the discretion of the employer to relieve pain and discomfort, would there by any jobs he could perform?
>
> A: No, sir.

[R. 52]. Taking the plaintiff's testimony as true, the VE's testimony establishes disability without a doubt.

## CONCLUSION

Therefore, the Commissioner failed to carry his burden at step five of showing the plaintiff could perform other work. Accordingly, the plaintiff is disabled within the meaning of the Social Security Act. An appropriate order remanding the action with instructions that the plaintiff be awarded the benefits claimed will be entered contemporaneously herewith.

DONE and ORDERED 7 October 2010.

_____
UNITED STATES DISTRICT JUDGE
J. FOY GUIN, JR.